NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NASH DISTRIBUTORS, INC.,          :

        Plaintiff,     :

                               Civil Action No. 01-250(JWB)

     v.                      :

                                **O P I N I O N**

GUINNESS BASS IMPORT COMPANY, :

        Defendant.     :

**APPEARANCES:**

    DILLON, BITAR & LUTHER
    By:  Robert E. Bartkus, Esquire
    53 Maple Avenue
    Morristown, New Jersey  07960

        - and -

    TANNENBAUM HELPERN
     SYRACUSE & HIRSCHTRITT
    By:  Andrew W. Singer, Esquire
    900 Third Avenue
    New York, New York  10022
    (Attorneys for Plaintiff)

    ROBINSON & LIVELLI
    By:  Leda Dunn Wettre, Esquire
    2 Penn Plaza East
    Newark, New Jersey  07102

        - and -

    GREENBERG TRAURIG
    By:  Robert A. Horowitz, Esquire
    885 Third Avenue, 21st Floor
    New York, New York  10022
    (Attorneys for Defendant)

**BISSELL**, Chief Judge

This matter comes before the Court on plaintiff Nash Distributors, Inc. ("Nash") appeal from Magistrate Judge G. Donald Haneke's April 15, 2004 Order denying plaintiff's motion to compel discovery. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## FACTUAL and PROCEDURAL HISTORY

### I. Parties

Plaintiff Nash is a New Jersey corporation with its principal place of business in Carlstadt, New Jersey. (Plaintiff's Facts, ¶¶ 1-2). Nash is a fourth generation, family-run, multi-brand beer wholesaler and distributor licensed under the laws of the State of New Jersey. (Id., ¶¶ 3-4).

Defendant Guinness Bass Import Company ("GBIC") is a Delaware corporation with its principal place of business in Stamford, Connecticut. (Defendant's R. 56.1 Statement ("Defendant's Facts"), ¶¶ 1-2). GBIC imports into the United States certain brands of beer and malt beverages, including but not limited to, Guinness Stout, Draught Guinness, Harp Lager, Bass Ale, Keliber Non-Alcoholic Brew, Red Stripe, Caffrey's Irish Ale, Smirnoff Ice and all varieties of such brands (the "Guinness Brands"). (Id., ¶ 3).

### II. Background

This case arises from the termination of the 1994

Distribution Agreement (the "Agreement") between the parties in January 2001. Defendant GBIC was obligated by paragraph 10(b) of that Agreement to pay plaintiff Nash an amount equal to plaintiff's "pre-tax net income" from the sale of GBIC brands during Nash's most recently completed fiscal year. Specifically, paragraph 10(b) of the Agreement provides for a Termination Payment as follows:

> In the event [Guinness] terminates this agreement pursuant to subparagraphs (a) or (c) of paragraph 9 hereof, [Guinness] shall pay Distributor an amount equal to Distributor's pre-tax net income attributable to the sale of the Products for Distributor's most recently completed fiscal year. For purposes of determining the amount payable to Distributor hereunder, 'pre-tax net income' shall mean the proceeds realized from the sale of the Products during Distributor's most recently completed fiscal year, less all direct and indirect costs associated with the sales promotion and marketing of the Products including post-off and quantity discounts, sales incentives, promotional and local advertising expenditures. This amount shall be determined in accordance with generally accepted accounting principles and practices....

(Nash Aff., Exh. 1 at 9). Nash contends that its pre-tax net income is $4,224,099.21; GBIC asserts that Nash was entitled to approximately $660,000.00 under that clause. Nash contested this amount and refused to release its claims against GBIC. GBIC asserts that Nash has therefore forfeited its right to any termination payment.

The parties filed cross-motions for partial summary judgment

and the Court heard oral argument on October 15, 2002. The Court determined that the central issue of this case is the interpretation of the contractual formula of GBIC's option to exit the distributorship for any reason or no reason, and then to move its beer brands elsewhere as contained in Paragraph 10(b) of the Agreement. ("Wettre Decl., Exh. A at 42:18-25; 43:1-25; 44:1-2). Specifically, the Court stated that Nash presented "what I would consider a truly literal reading of the language" of the Agreement. (Id. at 42:24-25). On the other hand, the Court noted that Guinness offered "essentially a two-fold argument." (Id. at 43:1-2). One that the Agreement does not "necessarily have to be read that way, but even more so than that, there really just isn't any inherent sense, commercial sense in the outcome achieved by the plaintiff's suggestion." (Id. at 4:3-6). Thus, in denying the parties' motions for summary judgment, the Court found that the definition of the "pre-tax net income" in the Agreement is ambiguous. The evidence before the Court of lack of commercial sense was the drafting history, the evidence of industry custom, and the multiple at which GBIC distribution rights historically have changed hands in a forced "sale," when the distributor has been terminated or threatened with termination. GBIC demonstrated that Nash's calculation yielded a payment higher than that at which GBIC distribution rights historically have changed hands in

jurisdictions permitting terminations without cause, and higher than the amount Nash's successor paid to acquire Nash's distribution rights from GBIC.

In an effort to demonstrate that its calculation makes "commercial sense," on July 31, 2003 Nash served plaintiff's Third Request for the Production of Documents (the "Request"). (Bartkus Cert., Exh. 5).  Particularly, Nash requested documents that would demonstrate that its calculation yields a termination payment equivalent to what its valuation expert calculates to be the fair market value of its distribution rights.  GBIC responded by serving Defendant's Responses and Objections to Plaintiff's Third Request for the Production dated September 19, 2003 (the "Objections").  (Id.)  Counsel for the parties entered into negotiations regarding the Request; however, they were unable to resolve GBIC's Objections to requests 1-3, 12, 17-21, 23-25 and 32-34.  (Id.)  Nash contends that all but one of the Requests address the issue before the Court, the inherent sense and commercial reasonableness of Nash's computation or the economic value of the distribution rights Nash contractually relinquished. Nash further asserts that GBIC's Objections ignore the Court's reasoning for denying both parties' summary judgment motions.

On April 15, 2004 Judge Haneke denied Nash's motion to compel in its entirety for the reasons provided in GBIC's letter opposing the motion dated February 9, 2004.  <u>Nash Distributors,</u>

Inc. v. Guinness Bass Import Co., No. 01-250 (D.N.J. Apr. 15, 2004) (order denying motion to compel).

## DISCUSSION

### I. Standard of Review

A United States Magistrate Judge has broad discretion in deciding a discovery motion. Fed. R. Civ. P. 72(a). "Where a magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of discretion." Cooper Hospital/University Med. Ctr. v. Sullivan, 183 F.R.D. 119, 127 (D.N.J. 1998); Lithuanian Commerce Corp. v. Sara Lee Hosiery, 177 F.R.D. 205, 214 (D.N.J. 1997). "This test displays considerable deference to the determination of magistrates in such matters." 7 Moore's Federal Practice ¶ 71.03(7.-3) at 72-42 (1989).

On appeal from such an order, the scope of this Court's review is narrow. Local Rule 72.1(c)(1)(A) governs appeals from non-dispositive orders of United States Magistrate Judges. It directs the Court to consider an appeal from a non-dispositive Magistrate's order and set aside any portion of it found to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1120 (3d Cir. 1986), cert. denied, 484 U.S. 976 (1987). A finding is "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the

entire evidence is left with the definite and firm conviction that a mistake has been committed." <u>Anderson v. City of Bessemer</u>, 470 U.S. 564, 573 (1985); <u>Republic of Philippines v. Westinghouse Elec. Corp.</u>, 132 F.R.D. 384, 387 (D.N.J. 1990) (quoting <u>United States v. United States Gypsum Co.</u>, 333 U.S. 364, 395 (1948).

## II. Magistrate's Decision is not Clearly Erroneous or an Abuse of Discretion

### A. Request Seeking Valuation Documentation

As stated above, Judge Haneke denied plaintiff's motion to compel discovery for the reasons set forth in GBIC's opposition letter dated February 9, 2004.  That letter asserted that Nash's motion to compel is based on its argument that the Request contains information that Nash's valuation expert needs to calculate the fair market value of Nash's distribution rights. GBIC's letter contended that the fair market value is irrelevant to the issues before the Court and it would be burdensome for GBIC to locate and provide copies of the documents.

Nash asserts that Magistrate Judge Haneke's Order is "contrary to law and an abuse of discretion." (Plaintiff's Br. at 13).  Specifically, Nash argues that "there can be no serious dispute" that the present value of the lost future earnings as calculated by its economist is relevant to the issue of whether Nash's interpretation of the pre-tax net income "makes commercial sense." (<u>Id</u>. at 15).  There is, however, a dispute about that

-7-

because Nash's argument is based on the premise that the present value of lost earnings, the long term value of distribution rights, is relevant to measure the "commercial reasonableness" of the termination payment.  Moreover, Nash has not demonstrated or provided evidence that the definition of the "pre-tax net income" used for the purpose of calculating the termination payment was intended to indicate the present value of lost future earnings at anytime.  The evidence indicates that the termination payment conformed with the standard industry practice in 1994 of GBIC's distribution rights changing hands at a profit multiple of one times net income from the preceding year.

The Court, in denying the parties' summary judgment motions, did not frame the issue as to what the long term distribution rights would be worth; rather, the Court inquired as to what the parties intended the amount of the termination payment to be at the time they agreed to the Agreement.  In other words, the central issue is whether Nash's interpretation of the amount of the termination payment is "commercially reasonable" as of the time the parties entered into the Agreement.

Nash argues that the Request relates to information that a credible valuation analyst must consider to develop an appraisal of the value of the lost distribution rights.  Nash contends that an appraised value is the fair market value of the distribution rights.  Nash's economist defines the fair market value "as the

cash equivalent price at which property would change hands between a willing seller and a willing buyer when neither is acting under compulsion and when both have reasonable knowledge of the relevant facts." (Bartkus Cert., Exh. 5, ¶ 5). Nash, however, did not voluntarily give up its distribution rights because it was terminated pursuant to a contract that allowed termination without cause. GBIC has produced files of forced terminations that did not involve a willing buyer or seller. Therefore, the Court concludes that documents regarding the present value of the lost earnings of the distribution rights is irrelevant.

B.  Request Seeking Transshipping Documents

The disputed Request that does not seek valuation documents seeks documents regarding the transshipping of GBIC's products from the territory of one or more distributors to that of others. Transshipping was prohibited by paragraph 1 of the Agreement and provided grounds for immediate termination under paragraph 9(b)(vii). GBIC alleged in its counterclaim that Nash breached the Agreement by selling to customers in its territory who it knew would sell the product outside the territory. Nash contends that the transshipping documents are relevant because similar activity by other contracted distributors would be a defense to GBIC's breach of contract claim. In other words, Nash argues that the transshipping documents will demonstrate that GBIC knew

that other distributors engaged in the same conduct and gave its express approval or waived any claim.  GBIC's failure to enforce the restriction, however, would not be relevant because paragraph 9(b) of the Agreement states that either party's failure at any time to enforce a provision shall not be construed as a waiver or affect the right of either party to enforce it at a later time. (See Raineult Decl., Exh. A).  Therefore, the Court concludes that the transshipping documents indicating the performance of other distributors contracted by GBIC is irrelevant.

## CONCLUSION

Based on the foregoing reasons, Nash's appeal of Judge Haneke's April 15, 2004 ruling is denied.


/s/    John W. Bissell
JOHN W. BISSELL
Chief Judge
United States District Court


DATED:  June 3, 2005