NOT FOR PUBLICATION

                              UNITED STATES DISTRICT COURT
                                DISTRICT OF NEW JERSEY


NASH DISTRIBUTORS, INC.,        :

            Plaintiff,          :

                                :       Civil Action No. 01-250(JWB)

            v.                  :

                                        **O P I N I O N**
GUINNESS BASS IMPORT COMPANY,   :

            Defendant.          :


**APPEARANCES**:

       DILLON, BITAR & LUTHER
       By:  Robert E. Bartkus, Esquire
       53 Maple Avenue
       P.O. Box 398
       Morristown, New Jersey  07936-0388
       (Attorneys for Plaintiff)

       SHEPPARD, MULLIN, RICHTER & HAMPTON
       By:  James J. McGuire, Esquire
       30 Rockefeller Plaza
       New York, New York  10112

              - and -

       ROBINSON & LIVELLI
       By:  Leda Dunn Wettre, Esquire
       Two Penn Plaza East, Suite 1100
       Newark, New Jersey  07105-2237
       (Attorneys for Defendant
       DIAGEO-Guinness USA Inc. (formerly
       known as Guinness Bass Import Company))

**BISSELL**, <u>Chief Judge</u>

       This matter comes before the Court on Plaintiff Nash

Distributors, Inc. ("Nash") motion for reconsideration of this

Court's Opinion and Order dated June 3, 2005 (the "Order"), which denied Nash's appeal from Magistrate Judge G. Donald Haneke's April 15, 2004 Order denying Nash's motion to compel discovery (the "Appeal").  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  For the reasons set-forth below, Nash's motion for reconsideration of this Court's opinion and order dated June 3, 2005 is DENIED.

<u>**FACTUAL AND PROCEDURAL HISTORY**</u>

**I.   <u>Parties</u>**

Plaintiff Nash is a New Jersey corporation with its principal place of business in Carlstadt, New Jersey.  (Pl. Facts ¶¶ 1-2.)  Nash is a fourth generation, family-run, multi-brand beer wholesaler and distributor licensed under the laws of the State of New Jersey.  (<u>Id.</u> ¶¶ 3-4.)

Defendant Guinness Bass Import Company ("GBIC") is a Delaware corporation with a its principal place of business in Stamford, Connecticut.  (Def. R. 56.1 Statement ["Def. Facts"] ¶¶ 1-2.)  GBIC imports into the United States certain brands of beer and malt beverages, including but not limited to, Guinness Stout, Draught Guinness, Harp Lager, Bass Ale, Kaliber Non-Alcoholic Brew, Red Stripe, Caffrey's Irish Ale, Smirnoff Ice and all varieties of such brands (the "Guinness Brands").  (<u>Id.</u> ¶ 3.)

**II.  <u>Background</u>**

This case arises from the termination of the 1994

-2-

Distribution Agreement (the "Agreement") between the parties in January 2001, Defendant GBIC was obligated by paragraph 10(b) of that Agreement to pay Plaintiff Nash an amount equal to Plaintiff's "pre-tax net income" from the sale of GBIC brands during Nash's most recently completed fiscal year.  Specifically, paragraph 10(b) of the Agreement provides for a Termination Payment as follows:

> In the event [Guinness] terminates this agreement pursuant to subparagraphs (a) or (c) of paragraph 9 hereof, [Guinness] shall pay Distributor an amount equal to Distributor's pre-tax net income attributable to the sale of the Products for Distributor's most recently completed fiscal year.  For purposes of determining the amount payable to Distributor herunder, 'pre-tax net income' shall mean the proceeds realized from the sale of the Products during Distributors's most recently completed fiscal year, less all direct and indirect costs associated with the sales promotion and marketing of the Products including post-off and quantity discounts, sales incentives, promotional and local advertising expenditures.  This amount shall be determined in accordance with generally accepted accounting principles and practices.

(Aff. Patrick A. Nash ("Nash Aff.") at Ex. 1.)  Nash contends that its pre-tax net income is $4,224,099.21; GBIC asserts that Nash was entitled to approximately $660,000.00 under that clause. Nash contested this amount and refused to release its claims against GBIC.  GBIC asserts that Nash has therefore forfeited its right to any termination payment.

The parties filed cross-motions for partial summary judgment

-3-

and the Court heard oral argument on October 15, 2002.  The Court determined that the central issue of this case is the interpretation of the contractual formula of GBIC's option to exit the distributorship for any reason or no reason, and then to move its beer brands elsewhere as contained in Paragraph 10(b) of the Agreement.  (Declaration of Leda Dunn Wettre ("Wettre Decl.") at Ex. A, 42:18-25; 43:1-25; 44:1-2.)  Specifically, the Court stated that Nash presented "what I would consider a truly literal reading of the language" of the Agreement.  (Id. at 42:24-25.) On the other hand, the Court noted that Guinness offered "essentially a two-fold argument."  (Id. at 43:1-2.)  One that the Agreement does not "necessarily have to be read that way, but even more so than that, there really just isn't any inherent sense, commercial sense in the outcome achieved by the plaintiff's suggestion."  (Id. at 43:3-6.)  Thus, in denying the parties' motions for summary judgment, the Court found that the definition of the "pre-tax net income" in the Agreement is ambiguous.  The evidence before the Court of lack of commercial sense was the drafting history, the evidence of industry custom, and the multiple at which GBIC distribution rights historically have changed hands in a forced "sale," when the distributor has been terminated or threatened with termination.  GBIC demonstrated that Nash's calculation yielded a payment higher than that at which GBIC distribution rights historically have

-4-

changed hands in jurisdictions permitting terminations without cause, and higher than the amount Nash's successor paid to acquire Nash's distribution rights from GBIC.

In an effort to demonstrate that its calculation makes "commercial sense," on July 31, 2003 Nash served Plaintiff's Third Request for the Production of Documents (the "Request"). (Cert. Robert Bartkus ("Bartkus Cert."), Ex. 5.)  Particularly, Nash requested documents that would demonstrate that its calculation yields a termination payment equivalent to what its valuation expert calculates to be the fair market value of its distribution rights.  GBIC responded by serving Defendant's Responses and Objections to Plaintiff's Third Request for the Production dated September 19, 2003 (the "Objections").  (Id.) Counsel for the parties entered into negotiations regarding the Request; however, they were unable to resolve GBIC's Objections to requests 1-3, 12, 17-21, 23-25 and 32-34.  (Id.)  Nash contends that all but one of the Requests address the issue before the Court, the inherent sense and commercial reasonableness of Nash's computation of the economic value of the distribution rights Nash contractually relinquished.  Nash further asserts that GBIC's Objections ignore the Court's reasoning for denying both parties' summary judgment motions.

On April 15, 2004 Magistrate Judge Haneke denied Nash's motion to compel in its entirety for the reasons provided in

GBIC's letter opposing the motion dated February 9, 2004.  <u>Nash Distributors, Inc., v. Guiness Bass Import Co.</u>, No. 01-0250 (D.N.J. Apr. 15, 2004)(order denying motion to compel).  On June 3, 2005 this Court entered an order which denied Nash's appeal from Magistrate Judge Haneke's April 15, 2004 order denying Nash's motion to compel discovery.  The Court now considers Nash's motion for reconsideration of this Court's decision affirming Magistrate Judge Haneke's order.

<u>DISCUSSION</u>

## I.   Standard for a Motion for Reconsideration

A motion for reconsideration is governed by Local Civil Rule 7.1(g).  <u>See Reinaldo Hernandez v. Art Beller</u>, 129 F. Supp. 2d 698, 701 (D.N.J. 2001).  The rule requires that the moving party "set forth concisely the matters or controlling decisions which counsel believes the [Court] has overlooked."  <u>Pittston Co. v. Sedgwick James of New York, Inc.</u>, 971 F. Supp. 915, 918-919 (D.N.J. 1997).  Thus, a party "must show more than a disagreement with the court's decision."  <u>Panna v. Firstrust Sav. Bank</u>, 760 F. Supp. 432, 435 (D.N.J. 1991).  A mere "recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden."  <u>Carteret Sav. Bank, F.A. v. Shushan</u>, 721 F. Supp 705, 709 (D.N.J. 1989).  "Only where the court has overlooked matters that, if considered by the court, might reasonably have resulted in a

different conclusion, will it entertain such a motion." <u>Re:</u>
<u>United States v. Compaction Sys. Corp. et al.</u>, 88 F. Supp. 2d
339, 345 (D.N.J. 1999).

To succeed on a motion for reconsideration, the moving party
must present "something new or something overlooked by the court
in rendering the earlier decision." <u>Khair v. Campbell Soup Co.</u>,
893 F. Supp. 316, 337 (D.N.J. 1991). "Courts in this district
have consistently interpreted the word 'overlooked' as the
dominant term in the rule." <u>Resorts Int'l, Inc. v. Great Bay</u>
<u>Hotel & Casino, Inc.</u>, 830 F. Supp. 826, 831 (D.N.J. 1992).
Requests pursuant to a motion for reconsideration are to be
granted "sparingly." <u>Maldonado v. Lucca</u>, 636 F. Supp. 621, 630
(D.N.J. 1986).

Parties are required to confine their arguments to facts and
issues presented to the court at the time the motion and issues
were decided. <u>Florham Park Chevron, Inc. v. Chevron U.S.A.</u>, 680
F. Supp. 159, 162 (D.N.J. 1988). Efforts to expand the record on
reargument are prohibited and will be excluded from the court's
evaluation. <u>Id.</u>   There is a strong policy against entertaining
reconsideration motions based on evidence that was readily
available at the time that the original motion was heard and the
Court may, in its discretion, refuse to consider such evidence.
<u>Florham Park Chevron, Inc.</u>, 680 F. Supp. at 162. Nevertheless,
if the Court finds that its consideration of evidence offered for

-7-

the first time on motion for reconsideration may lead to a different result than was reached originally, the court has discretion to consider that evidence.   <u>Panna v. Firstrust Sav. Bank</u>, 760 F. Supp. 432, 435 (D.N.J. 1991).

**II.   <u>Nash's Motion for Reconsideration</u>**

Nash asserts that this Court "overlooked" the New Documents when it denied the Appeal and found that Nash failed to submit evidence that the parties intended Nash to be compensated by an amount equal to fair market value.   Particularly, Nash posits that this Court did not "call for" the New Documents as stated in its June 2, 2004 letter.

Nash, however, misstates the text of the Court's June 2, 2004 letter, which stated:

> Plaintiff's request to provide the Court with additional documents . . . that were not a part of the Magistrate Judge's record is denied.   The Court, however, <u>will consider the recent letters submitted by both parties that discussed the disputed additional documents.   If upon further review it appears that the additional documents are very important to the decision on the present appeal, the Court may call for them at that time</u>.

(Certification of Robert E. Bartkus ("Bartkus Cert.") at Ex. 6.) (emphasis added).   The Court did not "call for" the New Documents because there simply was no need.   The provisions that Nash wanted the Court to consider were quoted in the parties' May 21, 2004 and May 24, 2004 letters, which the Court agreed to

consider.  (Id. at Exs. 4 & 5.)

Further, Nash argues that this Court "overlooked" the evidence in the New Documents because it concluded that Nash "failed to demonstrate or provide evidence that the definition of 'pre-tax net income' in the Buy-Out Formula was intended to indicate fair market value at anytime."  (Pl.'s Mem. of Law in Supp. of Mot. for Reconsideration ("Pl.'s Mem") at 3.)  Again Nash incorrectly quoted the Court.  The Court concluded that there was no evidence of an intent to pay "present value of lost future earnings at anytime."  Nash Distributors, Inc. v. Guinness Bass Import Co., No. 01-250, slip op. at 8 (D.N.J. June 3, 2005) (emphasis added).

Nash, however, suggests that for "present value of lost future earnings" one can substitute "fair market value" because "the present value of future earnings is a measure of the fair market value of the rights at issue and indeed, is the measure used under New Jersey law in distributor termination cases." (Pl.'s Reply Mem. of Law in Further Supp. of Mot. for Reconsideration ("Pl.'s Reply Mem.") at 2.)  In support of this argument Nash cites Cooper Distributing Co. V. Amana Refriferation, Inc., 180 F.3d 542 (3d Cir. 1999); however, in that case the Third Circuit did not state that present value of future earnings is one measure of the fair market value.  In Cooper, the Third Circuit stated that a "franchise should be

valued according to 'either the present value of lost future earnings or the present market value of the lost business, but not both.'"  180 F.3d at 546 (internal citation omitted).  This sentence does not persuade the Court to make the inference that "present value of lost future earning" is synonymous with "fair market value."

In addition to the above arguments, Nash contends that the Court "overlooked" two other dispositive reasons of why fair market value is relevant to the issues in this matter.  Specifically, Nash asserts that the Court "overlooked" whether (1) the buy-out provision should be treated as a liquidated damages provision, which is an unenforceable penalty; and (2) whether actual damages is the proper measure of damages for its breach of the implied covenant of good faith.  The Court, however, did not "overlook" these arguments but simply directed its attention to the central issue of the Appeal, the motion to compel discovery of the New Documents.  Nash asserts that the fair market value is relevant because the termination payment provision in the Agreement is a liquidated damages provision that can only be measured by Nash's actual damages.  According to Nash its actual damages would the fair market value of its long term distribution rights.

In particular, Nash argues that the Buy-Out Formula that allows early termination of the agreement for a stated price is

treated as a liquidated damages clause.  In determining whether a liquidated damages clause is an unenforceable penalty, New Jersey law requires an analysis of actual damages.  <u>Wasserman's, Inc. v. Township of Middletown</u>, 137 N.J. 238, 250, 252 (1994).  An unenforceable penalty is one that exceeds the reasonable estimate of actual damages and thus forces the party to perform the contract or pay an amount higher than the actual damages caused by a breach.  <u>See</u> <u>id.</u>  A stipulated damages clause focuses on the breach of an agreement and the parties' attempt to predict what their damages might be as result of non-performance of the contract.  <u>Id.</u> at 249.  Further, a stipulated damages provision is enforceable as liquidated damages if it is a reasonable forecast of the damages that would flow from the termination "either at the time of contract formation or at the time of the breach."  <u>Id.</u> at 251.

In this matter, if the Court treated the Termination Payment in the Agreement as a liquidated damages clause, the present value of lost future earnings in 2001 would be irrelevant because the Agreement had a one-year term renewable automatically for successive one year terms unless terminated by Paragraph 9. Paragraph 9(a) permitted GBIC to terminate Nash's distribution rights with or without cause at any time on ninety days written notice.  GBIC's performance of its express contractual right to terminate Nash is not a breach of contract.  Hence, the New

Documents, which allegedly provide evidence that the parties intended "pre-tax net income" in the Buy-Out Formula to indicate fair market value, are irrelevant.

The Court is also unpersuaded by Nash's argument that breach of the implied covenant of good faith and fair dealing requires that the New Documents be compelled.  An implied covenant of good faith cannot override an express provision granting an express right to terminate.  <u>Sons of Thunder, Inc. v. Borden, Inc.</u>, 148 N.J. 396, 420-423 (1997).  In the instant matter, the Agreement expressly permits termination and Nash cannot claim that the Agreement was breached based on the doctrine of implied covenant of good faith and fair dealing alone.  Rather, Nash would have to assert that GBIC performed in bad faith and that damages would flow from the bad faith performance, not from the termination that was expressly permitted in the Agreement.  Thus, the New Documents that supposedly provide evidence that the parties meant the Buy-Out Formula to indicate fair market value are also irrelevant to the implied covenant of good faith argument.

<u>**CONCLUSION**</u>

Based on the foregoing reasons, Nash's motion for reconsideration of this Court's Opinion and Order dated June 3, 2005 is DENIED.


                                   /s/    John W. Bissell
                                          JOHN W. BISSELL
                                            Chief Judge
                                   United States District Court


DATED:  August 25, 2005

-13-